UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


James Stile

    v.                                              Civil No. 15-cv-494-SM

United States Marshals
Service, et al.


**REPORT AND RECOMMENDATION**


    Before the court is a complaint, Document No. 1, filed by

James Stile against 32 defendants.[1]  Stile is appearing pro se

and in forma pauperis.  At all times relevant to his claims,

Stile was a federal pretrial detainee held at the Strafford

County House of Corrections ("SCHC").  Stile's complaint is

_____

[1]In addition to the U.S. Marshals Service, Stile has named
the following defendants: the Strafford County House of
Corrections ("SCHC"); Strafford County; the Strafford County
Sheriff; Strafford County Commissioners George Maglaras and
Robert Watson; County Administrator Raymond Bower; five health-
care providers (Dr. Dirksmeier, Christopher Schwieger, Dr.
Timothy Donnelly, Dr. Christopher Braga, and Jason Doran); three
medical practices (Seacoast Orthopedics & Sports Medicine,
American Institutional Medical Group, and Resources Re-Entry
Associates), 11 corrections officers ("CO") (Lt. Weisgarber, Lt.
Donna Roy, Lt. Lee, CO Metcalf, Cpl. Rivera, Cpl. Nadeau, CO
Goutier, Cpl. Robert Farrell, Sgt. Hayden, Sgt. Noseworthy, Lt.
Brackett); three SCHC administrators (Superintendent Bruce
Pelkie, Assistant Superintendent Jake Collins, and Medical
Administrator Tracey Warren), and three providers of mental-
health care (Robert Lang, Patti Place, and Patricia Lilly).  As
to the non-institutional defendants, Stile does not indicate
whether he is suing them in their individual capacities, their
official capacities, or both.

before the court for preliminary review, pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).

### Preliminary Review Standard

Under the statutes that govern preliminary review in this case, the court must dismiss the complaint, or any part thereof, if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); see also id. § 1915A(b)(1).  A claim on which relief may be granted is one in which the plaintiff's "allegations 'taken as true, . . . state a plausible, not a merely conceivable, case for relief." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102 (1st Cir. 2013) (quoting Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010)).  Finally, because Stile is appearing pro se, the court must construe his complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### Discussion

### I.   Events Prior to July 2013 (Compl. ¶¶ 35-38, 41)

#### A.   Background

On January 15, 2013, as a federal pretrial detainee, Stile was admitted into the SCHC.  Upon his arrival, he was placed in

"D-Pod," the jail's maximum security, disciplinary/punitive segregation unit.  He did not receive a hearing or any other form of process before he was placed in D-Pod.  When Stile asked SCHC officials why he had been placed in that unit, Sgt. Noseworthy, Lt. Brackett, and Superintendent Pelkie all told him that his placement was dictated by the United States Marshals Service.  Stile remained in D-pod until he was moved into the general population on February 25, 2013.  For some time after he arrived at the SCHC, Stile was not provided with Advair, a prescription medication that he had received in the Somerset County Jail, where he had been held before his transfer to the SCHC.  On February 11, 2013, while Stile was still housed in D-Pod, the unit was flooded with toilet water.  After Stile was placed in the general population, he began to hold Narcotics Anonymous ("NA") meetings, with jail officials' approval.  On March 25, Lt. Donna Roy ended Stile's NA meetings.  On May 22, 2013, Stile asked to see a mental-health care provider.  The appointment he received was "not expedient," and he did not receive Valium on the days he was scheduled to go to court.

B.   Initial Placement in D-Pod without Due Process

Plaintiff claims that his initial 42-day placement in D-Pod was carried out in violation of his constitutional rights

because he was not given a hearing or any other form of process before he was placed in that unit.  The placement of a pretrial detainee in administrative segregation may violate that person's Fourteenth Amendment rights to both substantive and procedural due process.  See, e.g., Almighty Supreme Born Allah v. Milling, No. 3:11cv668(WIG), 2016 U.S. Dist. LEXIS 45081, 2016 WL 1311997, at *7-*12 (D. Conn. Apr. 4, 2016).

Plaintiff has named defendants Noseworthy, Brackett, and Pelkie as defendants who may be liable to him on this claim under 42 U.S.C. § 1983.  Plaintiff has not, however, named any individual officers of the U.S. Marshals Service who might similarly be potentially liable for damages.  Plaintiff cannot state a claim for damages directly against the U.S. Marshals Service, as federal agencies cannot be held liable for damages under Bivens.  See FDIC v. Meyer, 510 U.S. 471, 485-86 (1994) (citing Bivens v. Six Unknown Named Fed. Narc. Agents, 403 U.S. 388 (1971)).  Accordingly, the district judge should dismiss plaintiff's claims against the U.S. Marshals Service and should also drop that agency as a defendant.

In the Order issued this date, the court directs service of Stile's claim for damages for violations of his due process rights as to SCHC defendants Noseworthy, Brackett, and Pelkie.

The court has also granted plaintiff leave to file a complaint amendment identifying any federal agents who may be responsible for Stile's initial placement in D-Pod, and stating all relevant factual allegations concerning what those federal agents did that could render them potentially liable under <u>Bivens</u>.

    C.   <u>Denial of Religious Services</u>

       1.   <u>First Amendment</u>

Plaintiff claims that his rights under the First Amendment were violated by Cpl. Farrell, Lt. Brackett, Assistant Superintendent Collins, and Superintendent Pelkie when he was denied the opportunity to participate in weekly religious services while he was being housed on D-Pod, in a manner plaintiff asserts was consistent with jail policy.  Plaintiff's allegations are sufficient to state a claim under the First Amendment against those defendants and the county.  Accordingly, in the Order issued this date, the court has served the complaint with respect to a First Amendment free exercise claims, as to defendants Farrell, Brackett, Collins, and Pelkie, in their individual and official capacities, and against Strafford County's agency, the SCHC.

       2.   <u>RLUIPA</u>

Plaintiff's allegations regarding his lack of access to

weekly religious services while in D-Pod may state a claim for relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.  Although there is no binding precedent in the First Circuit, the majority of courts that have addressed the issue have held that RLUIPA does not authorize claims for damages asserted against defendants sued in their individual capacities.  See Howard v. Skolnik, 599 F. App'x 323, 323 (9th Cir. 2015); see also Cryer v. Spencer, 934 F. Supp. 2d 323, 333 (D. Mass. 2013) (collecting Third, Fourth, Fifth, Seventh, Tenth, and Eleventh Circuit cases).  Following the well-reasoned authority of those courts, the district judge should dismiss Stile's personal capacity RLUIPA claims.

In the order issued this date, the court directs service of the RLUIPA claim for damages, with respect to defendants Farrell, Brackett, Collins, and Pelkie, in their official capacities only, and against Strafford County's agency, the SCHC.  This court reserves for future consideration in this court, upon proper motion, the question of whether a RLUIPA claim for damages may be asserted against those defendants. See, e.g., Kelley Bey v. Keen, No. 3:13-CV-1942, 2014 WL 3563475, at *13, 2014 U.S. Dist. LEXIS 97649, at *34 (M.D. Pa.

May 29, 2014) (noting, in dicta, that official capacity RLUIPA

claims for damages against county officials may be cognizable),

R&R approved, No. 3:13-CV-1942, 2014 U.S. Dist. LEXIS 101265,

2014 WL 3563475 (M.D. Pa. July 17, 2014).

     D.   Flooding in D-Pod

     Plaintiff claims that as a result of the February 11 flood

on D-Pod, he was subjected to cruel and unusual punishment.  He

bases his claim on allegations that while he warned "[n]umerous

defendants including defendant Lt. Brackett," Compl. ¶ 35, of

the physical harm to which he was exposed as a result of the

flood, none of them "answered any of [his] many many grievances

about the toilet water flooding," id.  The conditions about

which plaintiff complains are these: (1) ankle-deep toilet water

in his cell that was left standing for several hours before

inmates were directed to use a wet-dry vacuum to collect it and

dispose of it in the unit's shower area; and (2) sludge, scum,

and debris in the shower area, including feces and toilet paper,

that were not cleaned up for several days.  The harms plaintiff

claims to have suffered as a result of the flood are: (1)

breathing dirty humid air; (2) fearing possible infection; (3)

going without a shower for several days; and (4) being provided

with only eight ounces of bottled drinking water per day.

If plaintiff's claim is that one or more defendants are liable for failing to respond to his grievances, that claim fails because "there is 'no inherent constitutional right to an effective prison grievance procedure.'"  Leonard v. Moore, Nos. 2:10-CV-347 & 2:10-CV-951, 2012 U.S. Dist. LEXIS 164004, at *16, 2012 WL 5830251, at *5 (S.D. Ohio Nov. 16, 2012) (citations omitted), R. & R. adopted by 2012 WL 6139001, 2012 U.S. Dist. LEXIS 175170 (S.D. Ohio Dec. 11, 2012).

On the other hand, pretrial detainees do have a protected liberty interest, under the Fourteenth Amendment, to avoid conditions of confinement that amount to punishment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (pretrial detainees have a right to avoid conditions that manifest cruel and unusual punishment).[2]

---

[2]First Circuit cases equating the Fourteenth and Eighth Amendment standards for conditions of confinement claims, predate the Supreme Court's decision in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015). "After Kingsley, it is unclear whether courts should continue to use the Eighth Amendment's deliberate-indifference standard" to analyze claims brought by pretrial detainees pursuant to the Due Process Clause, "or whether an objective reasonableness standard should apply." Johnson v. Clafton, No. 13-14922, 2015 WL 5729080, at *4, 2015 U.S. Dist. LEXIS 132318, at *11-*12 (E.D. Mich. Sept. 30, 2015) (discussing pretrial detainee medical care claims). Cf. Colbert v. Gumusdere, No. 15CV1537-LTS-DCF, 2016 WL 1181726, at *4 n.4, 2016 U.S. Dist. LEXIS 39178, at *11 n.4 (S.D.N.Y. Mar. 25, 2016) ("The Kingsley holding has not yet, however, been applied beyond the context of excessive force cases."). Resolution of this

As the First Circuit has explained:

> In order to establish a constitutional violation, a
> plaintiff's claim must meet both objective and
> subjective criteria.  Farmer v. Brennan, 511 U.S. 825,
> 834 (1994).  First, the plaintiff must establish that,
> from an objective standpoint, the conditions of his
> confinement deny him the minimal measure of
> necessities required for civilized living.  Id.
> Second, the plaintiff must show that, from a
> subjective standpoint, the defendant was deliberately
> indifferent to inmate health or safety.  Id.
> Deliberate indifference, in this sense, is a mental
> state akin to criminal recklessness.  Id. at 836-37.

Surprenant, 424 F.3d at 18-19 (footnote and parallel citations

omitted).  Even when plaintiff's complaint is construed

liberally, see Erickson, 551 U.S. at 94, and all reasonable

inferences are drawn in his favor, Stile's complaint fails to

allege facts sufficient to meet the objective criteria necessary

to establish a constitutional violation based upon the

conditions created by the February 11 flooding in D-Pod.

There is no doubt that "the necessities required for

civilized living include sanitation."  Cole v. Fluery, No. 13-

cv-274-LM, 2015 U.S. Dist. LEXIS 20472, 2015 WL 736364, at *5,

(D.N.H. Feb. 20, 2015).  However:

> With regard to the allegedly inhumane conditions
> in this case [i.e., flooding in a cell resulting from
> toilet overflow], one court has explained that "[t]he

---

issue is reserved for a later stage of the case, after
defendants appear, and the issue is fully briefed upon a motion
necessitating the court's decision on this issue.

Eighth Amendment is generally not violated . . . where
unsanitary conditions are temporary."  To the
contrary, only a "[s]ubstantial deprivation[ ] of
. . . sanitation over an extended time [is]
sufficiently serious to satisfy the objective
component of an Eighth Amendment claim."

Cole, 2015 WL 736364, at *6 (citations omitted).  As Judge

McCafferty further explained:

Moreover, assuming that Cole had alleged that his
cell was flooded with water containing human waste,
that alone would be insufficient to state a plausible
claim for relief.  It is, of course, beyond reasonable
dispute that exposure to human waste is both offensive
and unhealthy.  Even so, mere exposure to human waste
is not enough to establish the objective component of
an inhumane-conditions claim; the court must still
examine the duration and intensity of the exposure.

Id., 2015 WL 736364, at *7 (citations omitted).

Here, Stile's allegations that the flood water remained in

his cell for several hours and that detritus from the flood

remained in the shower area for several days do not describe

exposure to hazardous conditions of a duration and intensity

sufficient to establish a constitutional violation.  See, e.g.,

Bagwell v. Brewington-Carr, No. CIV.A. 97-321-GMS, 2000 WL

1728148, at *19, 2000 U.S. Dist. LEXIS 21276, at *59 (D. Del.

Apr. 27, 2000) (corrections officer did not violate Eighth

Amendment by confining prisoner for "at most, a few days in a

cell where water coated the floor"); Spears v. Ferguson, Civil

No. 08-5203, 2010 WL 909202, at *6, 2010 U.S. Dist. LEXIS 22378,

at *14 (W.D. Ark. Feb. 12, 2010) (objective component not
satisfied when inmate spent 19 hours in cell with residue from
toilet flooding), R&R approved by No. 08-5203, 2010 U.S. Dist.
LEXIS 22381, 2010 WL 909202 (W.D. Ark. Mar. 11, 2010).

The foregoing analysis covers Stile's claims that he was
harmed by several hours of exposure to flood water, humidity,
and human waste from an overflowing toilet.  Similarly
insufficient is his claim to have been harmed by a lack of
showers for several days.  See, e.g., Richmond v. Settles, 450
F. App'x 448, 455 (6th Cir. 2011) (six days without a shower and
personal hygiene items not actionable); see also Hightower v.
Vose, 95 F.3d 1146, 1996 U.S. App. LEXIS 24041, at *6, 1996 WL
516123, at *2 (1st Cir. Sept. 12, 1996) (unpublished table
decision) ("single instance of being denied a shower for eight
days, without more," does not states due process violation).
Accordingly, the district judge should dismiss those claims of
Fourteenth Amendment violations.

E.   Deprivation of Drinking Water

The only factual allegation in paragraph 35 of plaintiff's
complaint that remains is his allegation that "[f]or two days,
[he] was without clean drinking water [because he] was supplied
only one 8 oz. container of bottled water for each day."  Compl.

¶ 35.  Inadequate provision of drinking water for several days can state a claim for relief.  See Dellis v. Corr. Corp. of Am., 257 F.3d 508, 512 (6th Cir. 2011) (three day deprivation of drinking water stated claim for relief); see also Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 228 (3d Cir. 2015) ("We are satisfied that appellant's allegation that she was deprived of potable water for three consecutive days . . . did set forth [an Eighth Amendment] claim [and] [w]e reach the same conclusion with respect to the denial of potable water during her [two-day] confinement").  Based upon the foregoing, it is not possible reject plaintiff's drinking-water claim out of hand.

Plaintiff's failure to identify the defendant or defendants who were responsible for the alleged deprivation makes it impossible for the court to order service of this claim on any particular individual.  Given the possibility that plaintiff has suffered a deprivation of constitutional dimensions, in the Order issued this date, the court gives plaintiff leave to amend his complaint to adequately allege a conditions-of-confinement claim against specific defendants, based upon the alleged deprivation of drinking water in February 2013.

F.   Denial of Out-of-Cell Time

Plaintiff claims that one or more unnamed defendants denied

him "his mandatory one hour of out of cell time," Compl. ¶ 36,
and a shower, on February 13, 2013.  He does not allege any
physical injury, or risk of harm, resulting from those
deprivations.  As a matter of law, those allegations are
insufficient to satisfy the objective component of an inhumane
conditions-of-confinement claim.  See, e.g., Oliver v. Dep't of
Corr., No. 3:13CV-P820-H, 2014 WL 321215, at * 3, 2014 U.S.
Dist. LEXIS 10627 (W.D. Ky. Jan. 28, 2014) (denial of one hour
of out-of-cell time on each of nine occasions did not state
constitutional claim where inmate plaintiff did not allege
physical injury or substantial risk of serious harm resulting
from deprivation).  Accordingly, this claim should be dismissed.

     G.   Discontinuance of Narcotics Anonymous Meetings

     Plaintiff claims that by discontinuing the NA meetings he
had held for several weeks, Lt. Roy violated his "1st Amendment
freedom of speech rights, freedom to assemble and freedom of
education and 5th and 14th Amendment Constitutional rights of
due process and equal protection of the law."  Compl. ¶ 38.
According to plaintiff, Lt. Roy's action "deprived [him] of
liberty interests and more importantly his right to participate
in a program of recovery that makes it possible for [him] to
sustain life and freedom from active addiction."  Id.  However,

inmates have no federal constitutional right to participate in
rehabilitative programs while incarcerated.  <u>Fiallo v. De
Batista</u>, 666 F.2d 729, 730 (1st Cir. 1981).  Plaintiff has not
alleged facts sufficient to state any First Amendment claim, due
process claim, or equal protection claim.  Accordingly, the
district judge should dismiss any claims arising out of the
cancellation of the Narcotics Anonymous meetings.

> H.   <u>Medical Care Claims</u>

> 1.   <u>Delayed Provision of Advair</u>

Plaintiff claims that Pelkie and medical administrator
Tracey Warren are liable to him for acting with deliberate
indifference to a serious medical need when they took some
unidentified amount of time to prescribe and dispense Advair, a
medication he had received in his previous correctional
facility, before his transfer to the SCHC.[3]  The right of a
pretrial detainee to adequate medical care arises under the Due
Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Surprenant</u>, 424
F.3d at 18.  For the purpose of preliminary review, allegations
that Warren and Pelkie denied Stile Advair are sufficient to

---

[3]Regarding the amount of time he was without Advair,
plaintiff says this: "Medical records of the [SCHC] will show
how long the Plaintiff had to suffer before he was prescribed
and dispensed the correct breathing medicine."  Compl. ¶ 40.

state a claim for relief.  Accordingly, in the Order issued this
date, the court has directed service on defendants Warren and
Pelkie, with respect to this claim.

> 2.   Untimely Mental Health Care & Denial of Valium

Plaintiff next claims that "Defendants (Mental Health
Provider), failed to provide for [his] mental health needs
beginning on May 22, 2013," Compl. ¶ 41, because the appointment
they gave him "was not expedient," id.  The facts alleged as to
the inexpediency of that appointment do not suggest that the
appointment at issue was punitive, and the allegations relating
to mental health care do not otherwise state a claim for relief
for a violation of plaintiff's Fourteenth Amendment rights.

In particular, with respect to the provision of Valium,
plaintiff further alleges:

> Plaintiff requested medicine on an "as needed basis,"
> for the days he was going to Court such as a Valium,
> which [he] knew to work for him from previous
> experience.  Defendants refused to dispense such
> medicine stating it is addictive and their policy of
> Strafford County House of Corrections being a non
> narcotic facility and compelled [him] to experiment
> with other medicines to no avail, which just
> compounded [his] mental health problems.

Id. (emphasis in the original).

Pretrial detainees have a Fourteenth Amendment right to
conditions of confinement, including medical care, that does not

amount to punishment.  To state an analogous Eighth Amendment
claim arising from the denial of medical care, an inmate must
allege that the defendant committed "acts or omissions . . .
sufficiently harmful to evidence deliberate indifference to
serious medical needs."  Leavitt v. Corr. Med. Servs., Inc., 645
F.3d 484, 497 (1st Cir. 2011) (internal quotation marks and
citation omitted); see also Farmer, 511 U.S. at 834.  Deliberate
indifference, however, does not exist when an incarcerated
plaintiff merely disputes the choice of a certain course of
treatment rather than the complete lack of treatment.  See
Kosilek v. Spencer, 774 F.3d 63, 92 (1st Cir. 2014) (en banc),
cert. denied, 135 S. Ct. 2059 (2015).  Nothing alleged by
plaintiff suggests that health care provider decisions to
prescribe other medications for plaintiff and not Valium
amounted to punishment, or that those providers' decisions
manifested deliberate indifference to a serious medical need.
Accordingly, this claim should be dismissed.

    I.   Municipal and Supervisory Liability

Defendants cannot be held liable under a theory of
respondeat superior under 42 U.S.C. § 1983.  See Ashcroft v.
Iqbal, 556 U.S. 662, 677 (2009).  A plaintiff asserting a claim
that a supervisor is liable must show that the "supervisor's

conduct (whether action or inaction) constitute[d] 'supervisory encouragement, condonation or acquiescence[,] or gross negligence of the supervisor amounting to deliberate indifference.'" Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012). Similarly, a "plaintiff who brings a section 1983 action against a municipality . . . must identify a municipal policy or custom that caused the plaintiff's injury." Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (citations and internal quotation marks omitted). Except as to the claims alleging plaintiff's lack of access to religious services while in D-Pod, plaintiff has failed to state a claim that any constitutional violations he suffered while at SCHC prior to July 2013 resulted from a county policy, practice, or custom.

## II.  **Mail Claims (Compl. ¶ 39)**

Plaintiff alleges facts in ¶ 39 of the Complaint which he asserts give rise to claims of violations of his First Amendment right to receive mail while incarcerated, and his right of access to the courts.  Stile alleges that on occasions in 2013, while he was attending out-of-state proceedings, the U.S. Marshals Service moved him temporarily to other facilities.  The SCHC mailroom did not honor Stile's requests that his incoming

mail be held during those temporary absences, despite SCHC
officials' knowledge that he would be transferred back to the
SCHC, causing some of Stile's incoming mail to be returned to
sender and/or delivered late to him.  The allegations here, in
Complaint ¶ 39, relating to delayed mail delivery, stripped of
legal conclusions about their impact on plaintiff's legal
matters, do not state claims of violations of Stile's Fourteenth
Amendment rights relating to conditions of confinement, right of
access to the courts, or any other federal constitutional right.
To the extent Stile seeks to assert such claims, the district
judge should dismiss them.

Plaintiffs' allegations in Complaint ¶ 39 resemble similar
allegations he made in Stile v. Pelkie, Case No. 13-fp-466
(D.N.H.).  In that case, the court in November 2013 granted
Stile leave to file an amended complaint adding facts relating
to plaintiff's § 1983 claim that defendants at SCHC had
interfered with his mail, in violation of his rights under the
First Amendment.  See id., Nov. 6, 2013, Order (ECF No. 6).
Stile voluntarily dismissed that case, without prejudice, before
his deadline for amending that complaint expired.  Consistent
with the court's November 2013 Order to amend in Stile v.
Pelkie, this court has also granted Stile leave to add pertinent

facts regarding the identity of SCHC officials who he alleges mishandled his incoming mail, and regarding what those officials knew about Stile's temporary transfers and what steps they took with Stile's mail, for the purpose of stating a First Amendment claim relating to his incoming mail.

## III. <u>Dismissal of Remaining Claims, without Prejudice</u>

Stile's complaint is 142 pages long.  A section labeled "Facts" includes 136 paragraphs, covers nearly 90 pages, and in some places resembles a diary of plaintiff's detention.  <u>See</u> Compl. (Doc. No. 1) 95 ("Today is February 11, 2015 and it has been three days now that I have been trying to coordinate filing legal papers that are required by law.").[4]  The Facts section is

---

[4]The diary-like quality of plaintiff's factual recitation leads to self-contradictory passages such as this one:

> The Plaintiff has made two written requests for the results of [his] MRI, meaning a copy of the report. One was a letter . . . dated January 19, 2015 and another [was] in a medical grievance which remain[s] unanswered.  It is now January 24, 2015, and the Plaintiff still does not have an MRI report.  The MRI report was not provided until February 10, 2015. . . . The plaintiff quite constantly thinks back to November 21, 2014 when the pain was so bad that the Plaintiff attempted to take his life and gets disgusted that <u>still</u> has not received a report of the MRI or a plan for treatment.

Compl. 89 (emphasis in the original).  Plaintiff either has, or has not, received a report on his MRI, but the complaint does not make that issue clear.

followed by sections devoted to each of ten legal theories or causes of action.[5]  Under those ten headings, plaintiff asserts approximately 635 separate claims.  Each claim is asserted in a single sentence such as this one: "See details in # 42 of Facts."  Compl. 97.  The complaint continues with a section entitled "Claims For Relief" which includes 74 paragraphs such as this one:

> The actions of defendants in using physical force against the plaintiff without need or provocation, or in failing to intervene to prevent the misuse of force were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the 14th Amendment of the United States Constitution.

Id. at 126.

The complaint in this case has much in common with the complaint the court dismissed in Chase v. Chafee, No. CA 11-586ML, 2011 WL 6826504, 2011 U.S. Dist. LEXIS 149061 (D.R.I. Dec. 9, 2011), R&R adopted by 2011 WL 6826629, 2011 U.S. Dist.

---

[5]These include: "Slander of the Plaintiffs' good name," Compl. 97; "Misuse of Force or Power," id.; "Denial of Due Process," id. at 99; "Cruel & Unusual Punishment," id. at 105; "Failure to Report to Superiors or Others," id. at 109; "Denial of Medical Care," id. at 110; "Denial of Freedom of Speech & Religion," id. at 112; "Denial of Access to Courts and Attorney's & 6th Amendment," id. at 116; "Denial of right to confront witnesses and to Cross-examine witnesses," id. at 118; and "Violation of the 5th Amendment of the United States Constitution," id. at 119.

LEXIS 149063 (D.R.I. Dec. 28, 2011).  The complaint in Chase

consisted of 600 paragraphs, 246 pages, and 76 discrete claims.

See id., 2011 WL 6826504, at *1.  Substantively, the plaintiff

in Chase brought "seventy-six claims against forty-eight

defendants on a variety of topics."  Id., 2011 WL 6826504, at

*3.  On preliminary review, the Magistrate Judge in Chase

determined that the complaint was procedurally defective because

it plainly violated both: (1) "Rule 8's admonitions that

pleadings should contain a 'short and plain statement of the

claim' and be "simple, concise, and direct,'" id., 2011 WL

6826504, at *4 (quoting Fed. R. Civ. P. 8); and (2) "the joinder

principles of Rules 18 and 20," id., 2011 WL 6826504, at *4

(citing Fed. R. Civ. P. 18 & 20).  The Magistrate Judge in Chase

continued:

> Plaintiff seeks to join forty-eight defendants and
> pursue seventy-six distinct claims against them in a
> single suit.  Also, Plaintiff is not asserting all
> seventy-six claims against all forty-eight defendants.
> Rather, each claim is brought only against one or
> several particular defendants.  The [Federal] Rules
> [of Civil Procedure] simply do not allow "the joinder
> of unrelated claims against different defendants."
> . . . Here, my review of Plaintiff's Complaint clearly
> establishes that Plaintiff's claims against the forty-
> eight defendants do not factually arise from a common
> "transaction, occurrence, or series of transactions or
> occurrences" and will not involve universally common
> questions of law or fact.  Since this Court would not
> accept this type of "omnibus" pleading of unrelated
> claims from a lawyer or non-prisoner pro se litigant,

> it should not be accepted from this prisoner litigant.
> Thus, I recommend that Plaintiff's Complaint be
> DISMISSED WITHOUT PREJUDICE.

Chase, 2011 WL 6826504, at *4 (citations omitted).  See also

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated

claims against different defendants belong in different suits,

not only to prevent the sort of morass that this 50-claim, 24-

defendant suit produced but also to ensure that prisoners pay

the required filing fees — for the Prison Litigation Reform Act

limits to 3 the number of frivolous suits or appeals that any

prisoner may file without prepayment of the required fees.").

Similarly, in Askew v. Davis, No. 11-cv-0902-MJR, 2012 U.S.

Dist. LEXIS 113019, 2012 WL 3308639 (S.D. Ill. Aug. 13, 2012), a

case in which the plaintiff asserted a more focused set of

claims than Stile asserts here, the court stated the following

in its order on preliminary review:

> In George, [507 F.3d at 605,] the Seventh Circuit
> emphasized that unrelated claims against different
> defendants must be filed in (or severed into) separate
> lawsuits, to prevent the "morass" produced by multi-
> claim, multi-defendant suits and "also to ensure that
> prisoners pay the required filing fees" under the
> Prison Litigation Reform Act (i.e., filing fees are
> required for every lawsuit, and inmates cannot skirt
> that responsibility by lumping multiple unrelated
> claims together in a single suit).
>
> [T]he Seventh Circuit [has since] . . . reiterated
> that when a complaint clumsily joins unrelated
> defendants and claims, representing "the archetype of

> unwieldy prisoner litigation," the district court on
> 1915A review should either dismiss the improperly
> joined defendants or carve the case into separate
> lawsuits.  Opting for the former approach in this
> particular situation, the Court dismisses from this
> action (without prejudice to re-filing in separate
> suits, supported by separately paid filing fees) all
> claims based on Askew's medical treatment prior to his
> arrival at PCC.

Askew, 2012 U.S. Dist. LEXIS 113019, at *7, 2012 WL 3308639, at

*2-*3 (citations omitted).

Here, Stile has sued 32 different defendants, asserting

claims under at least ten different legal theories, arising from

what appear to be a dozen or more different transactions or

occurrences that took place over the course of more than two

years.  Stile's claims arising from allegedly inadequate medical

care for dental problems, for example, are not properly joined

in the same lawsuit with claims against different defendants,

arising from an alleged denial of the right to engage in

religious activities.  In short, the reasoning of Chase, Askew,

and George is persuasive.  Therefore, the district judge should

dismiss all claims asserted in the complaint, which arise out of

incidents occurring during or after July 2013, without prejudice

to Stile's ability to file separate lawsuits based on those

23

incidents, in accordance with Rules 8, 18, and 20 and the

principles discussed here and in <u>Chase</u>, <u>Askew</u>, and <u>George</u>.[6]

## Conclusion

For the foregoing reasons, the magistrate judge recommends

that:

1.   The district judge should dismiss all claims
based upon the factual allegations in paragraphs 36-
38 and 41 of the Complaint, for failure to state a
claim on which relief can be granted, and all claims
based on the factual allegations in paragraphs 35,
except insofar as this court has granted Stile an
opportunity to amend a conditions of confinement claim
relating to the lack of drinking water, in the Order
issued this date;

2.   The district judge should dismiss all claims
based on the factual allegations in paragraph 39 of
the Complaint, relating to the handling of Stile's
incoming mail at SCHC, for failure to state a claim,
except insofar as this court has granted Stile an
opportunity to amend a First Amendment claim relating
to those allegations, in the Order issued this date.

---

[6]To avoid unnecessarily generating statute of limitations
issues with respect to Stile's claims dismissed from this case
without prejudice, arising on or after July 2013, and in the
interest of justice given plaintiff's pro se status, this Report
and Recommendation addresses the merits of plaintiff's claims
relating to incidents occurring before July 2013 in Part I,
above and the merits of claims relating to the handling of
Stile's mail, in Part II above.  In limiting the merits-based
review of Stile's claims, this court does not express any
opinion with respect to whether there are viable claims in the
remaining parts of the Complaint.

3.   The district judge should dismiss all claims based upon the factual allegations in paragraphs 42-169 of the Complaint, concerning events occurring in July 2013 or thereafter, without prejudice to plaintiff's ability to file separate actions that comply with Federal Rules of Civil Procedure 8, 19, and 20, and the principles articulated in Part III of this Report and Recommendation;

4.   The district judge should dismiss all claims asserted against all of the individual defendants other than Noseworthy, Farrell, Brackett, Collins, Warren, and Pelkie (upon whom service is directed in the Order issued this date);

5.   The district judge should dismiss all official capacity claims, all claims against the U.S. Marshals Service, and all claims asserted against Strafford County, its officers, and its agencies, except for the First Amendment and RLUIPA claims against the SCHC, an agency of Strafford County, and defendants Farrell, Brackett, Collins, and Pelkie, in their official capacities as SCHC officers and officials;

6.   The district judge should dismiss all claims against the Strafford County Sheriff, Seacoast Orthopedics & Sports Medicine, American Institutional Medical Group, and Resources Re-Entry Associates, because none of plaintiff's surviving claims allege conduct by those defendants; and

7.   The district judge should cause the following defendants to be dropped from this action, by approving this Report and Recommendation, as no claim remains against them in this action:  the U.S. Marshals Service; the Strafford County Sheriff; Strafford County Commissioners George Maglaras and Robert Watson; County Administrator Raymond Bower; Dr. Dirksmeier, Christopher Schwieger, Dr. Timothy Donnelly, Dr. Christopher Braga, and Jason Doran; Seacoast Orthopedics & Sports Medicine; American Institutional Medical Group; and Resources Re-Entry Associates; SCHC Lt. Weisgarber, Lt. Donna Roy, Lt. Lee, Corrections Officer ("CO") Metcalf, Cpl. Rivera,

Cpl. Nadeau, CO Goutier, Cpl. Robert Farrell, and Sgt.
Hayden; and Robert Lang, Patti Place, and Patricia
Lilly.

Any objection to this report and recommendation must be
filed within 14 days of receipt of this notice.  See Fed. R.
Civ. P. 72(b)(2).  Failure to file an objection within the
specified time waives the right to appeal the district court's
order.  See Garayalde-Rijos v. Muni. of Carolina, 747 F.3d 15-
21-22 (1st Cir. 2014).

Andrea K. Johnstone
United States Magistrate Judge


May 9, 2016


cc:  James Stile, pro se