**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>James Stile</u>

     v.                              Case No. 15-cv-494-SM
                                           Opinion No. 2019 DNH 161
<u>Strafford County Department</u>
<u>of Corrections, Bruce Pelkie,</u>
<u>Jake Collins, Tracey Warren,</u>
<u>Robert Farrell, Laura Noseworthy,</u>
<u>and Christopher Brackett</u>

## O R D E R

Before the court is defendants' (first) motion for summary judgment (Doc. No. 74), which seeks judgment as a matter of law on the four claims that have been allowed to proceed in this action. In their motion, defendants argue that plaintiff, James Stile, failed to exhaust the available administrative remedies at the Strafford County House of Corrections ("SCHC") from January 2013 through June 2015 when he was in pretrial detention, warranting summary judgment pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, as to each of the claims remaining in this action.

Although Stile did not file a timely objection to the instant motion, Stile objected to defendants' (second) motion for summary judgment, in a filing he entitled, "Plaintiff's Response to Motion for Summary Judgment" (Doc. No. 85) (hereinafter "Stile Decl."). That filing ends with Stile's

1

declaration, signed upon pains of perjury, that the matters asserted in Document No. 85 are true to the best of his knowledge.  This court considers the record before the court relevant to defendants' (first) summary judgment motion to include the pertinent exhibits to defendants' (second) summary judgment motion (Doc. No. 83), as well as the factual matters declared to be true in Document No. 85.


## Summary Judgment Standard

"Summary judgment is warranted if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Luceus v. Rhode Island, 923 F.3d 255, 256-57 (1st Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). Where the party moving for summary judgment bears the burden of proof on an issue, that party "must provide evidence sufficient for the court to hold that no reasonable trier of fact could find other than in its favor." Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008); see also Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez, 659 F.3d 42, 50 n.10 (1st Cir. 2011) (once defendant moving for summary judgment on affirmative defense produces "conclusive" evidence to

establish defense, burden shifts to plaintiff to show that defense does not apply).

As to issues on which the nonmoving party bears the burden of proof, the party moving for summary judgment must first identify the portions of the record that show the absence of any genuine issue of material fact; then the burden shifts to the nonmoving party to demonstrate, by reference to materials of evidentiary quality, that a trier of fact could reasonably resolve that issue in the nonmoving party's favor. Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016). The nonmoving party's failure to make the requisite showing as to issues upon which it bears the burden of proof "entitles the moving party to summary judgment." Id.

## Claims

Four claims remain in this action:

(1) a Fourteenth Amendment procedural due process claim arising from Stile's placement in disciplinary segregation on "D-Pod" upon his arrival at the SCHC, without prior notice and a hearing;

(2) a First Amendment free exercise claim arising from Stile's alleged lack of access to weekly religious services while he was housed on D-Pod;

(3) a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), also arising from Stile's alleged lack of access to weekly religious services while on D-Pod; and

(4) a Fourteenth Amendment inadequate medical care claim arising from the alleged withholding of the appropriate dosage of a prescription breathing medication, known as Advair, for two years while Stile was in pretrial detention at the SCHC.

See Aug. 2, 2017 R&R (Doc. No. 61), at 1-2 (listing claims), approved by Sept. 1, 2017 Order (Doc. No. 62).


## Discussion

I.   PLRA Exhaustion

Defendants argue that, as to each of the remaining claims, Stile did not exhaust the grievance procedures that were generally available at the SCHC, which warrants an order granting their motion for summary judgment on those claims.  The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is designed to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Porter v. Nussle, 534 U.S. 516, 524–25 (2002).

The "PLRA exhaustion requirement requires proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 93 (2006), which

4

means using all the steps that the prison grievance system makes available, and doing so in conformity with the agency's deadlines and other critical procedural rules, id. at 90. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

There is one exception to the exhaustion rule - administrative remedies must, in fact, be "available" to the prisoner. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016). Circumstances in which a remedy may be considered unavailable include when "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates," id. at 1859; when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," id. at 1860; and when "rules are 'so confusing that . . . no reasonable prisoner can use them,'" id. at 1859 (citations omitted). Claims for which a plaintiff has not exhausted his available administrative remedies are subject to dismissal. See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

Failure to exhaust available administrative remedies is an affirmative defense on which defendants bear the burden of proof. See Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). At the summary judgment

phase, defendants bear the initial burden of showing that plaintiff failed to exhaust all of his generally available administrative remedies.  See Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015); Albino, 747 F.3d at 1172. Then, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him," Albino, 747 F.3d at 1172; see also Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

II.  Grievance Procedures

While Stile was at the SCHC, the Strafford County Department of Corrections ("SCDOC") had an Inmate Grievance Procedure which was "the only approved method of addressing grievances, conditions of confinement complaints or mistreatment."  SCDOC Operational Guidelines, Inmate Grievance Procedure (rev. May 19, 2009) ("Op. Guidelines") (Ex. A, Attach. 1 to Decl. Gwen Weisgarber ("Weisgarber Decl.")) (Doc. No. 74-3, at 2); see also SCDOC Inmate Handbook (rev. Aug. 12, 2011) (Ex. B, Attach. 1 to Weisgarber Decl.) ("2011 Inmate Handbook") (Doc. No. 74-4, at 4); SCDOC Inmate Handbook (rev. Mar. 31, 2013) (Ex. B, Attach. 2 to Weisgarber Decl.) ("2013 Inmate Handbook") (Doc.

No. 74-4, at 11).[1]

"The [grievance] procedure is provided to inmates in the Inmate Handbook," Stile v. Dubois, No. 17-cv-406-JD, 2019 DNH 065, 2019 U.S. Dist. LEXIS 59737, at *4, 2019 WL 1515285, at *2 (D.N.H. Apr. 8, 2019); each Handbook in the record states that it is a posted rule that inmates must follow. See 2011 Inmate Handbook (Doc. No. 74-4, at 4); 2013 Inmate Handbook (Doc. No. 74-4, at 11). All inmates receive a copy of the Inmate Handbook shortly after they arrive at the SCHC, and Inmate Handbooks are available in the SCHC housing units. See Weisgarber Decl. ¶¶ 14-15 (Doc. No. 74-2, at 3).

At all relevant times, the SCDOC grievance procedure had three steps. The first step requires an inmate to "file a written formal grievance" with the Unit Officer, "within two weeks of discovery of a grievable issue." 2011 Inmate Handbook

---

[1]The Inmate Grievance Procedure that was in effect at the start of Stile's SCHC detention in January 2013 was twice revised before his February 2015 transfer out of the SCHC, see Weisgarber Decl. ¶ 5 (Doc. No. 74-2, at 1), but not in a way that has a bearing on any issues before this court. This Order cites the earliest applicable version of the Inmate Grievance Procedure, except as otherwise indicated. The Inmate Handbook provided to SCHC inmates was revised four times while Stile was at the SCHC, see Weisgarber Decl. ¶ 12 (Doc. No. 74-2, at 2-3). The August 12, 2011 and March 31, 2013 handbook revisions are cited in this Order; the later revisions in the record do not differ materially from the March 31, 2013 revision. Compare 2013 Inmate Handbook (Doc. No. 74-4, at 11), Inmate Grievances ¶ 16, with SCDOC Inmate Handbooks (rev. July 5, 2013 & rev. Dec. 4, 2013) (Ex. B, Attachs. 3 & 4 to Weisgarber Decl.) (Doc. No. 74-4, at 14-18; 20-66).

(Doc. No. 74-4, at 4); 2013 Inmate Handbook (Doc. No. 74-4, at 11).  At that point,

> [t]he Unit Supervisor will resolve the grievance if possible, but otherwise the duty shift supervisor will address the grievance.  The shift supervisor will address the grievance within five business days, return the original to the inmate, and place a copy in the inmate's Booking Folder.

Dubois, 2019 U.S. Dist. LEXIS 59737, at *5, 2019 WL 1515285, at *2; see also Op. Guidelines, ch. 3.6.04, Proc. B, ¶ 3(e); 2011 Inmate Handbook, Inmate Grievances ¶ 11(d).

The second step of the grievance procedures involves an appeal of the shift supervisor's decision (or lack of a response).  The Inmate Handbook in effect prior to March 31, 2013 stated that the appeal had to be submitted to the "appropriate Assistant Superintendent."  See 2011 Inmate Handbook, Inmate Grievances ¶ 15.  The Inmate Handbooks in effect after that date required inmates to submit their appeals to the "Lieutenant – Operations and Security," who is further identified in each Inmate Handbook as Lt. Chris Brackett.  The grievance procedures at all relevant times required that officer to respond to the inmate in writing within five business days. See Op. Guidelines, ch. 3.6.04, Proc. B, ¶ 7; see also 2011 Inmate Handbook, Inmate Grievances ¶ 15(b); 2013 Inmate Handbook, Inmate Grievances ¶ 16(b).

The third step of the grievance process is further review by a Grievance Committee. A Grievance Committee is convened if the inmate is not satisfied with the response to his initial grievance appeal, and the inmate requests further review within five business days. Op. Guidelines, ch. 3.6.04, Proc. B, ¶ 8; 2011 Inmate Handbook, Inmate Grievances ¶ 17; 2013 Inmate Handbook, Inmate Grievances ¶ 18. In most cases, the Grievance Committee's decision is final; inmates may not appeal to the Superintendent, although the Superintendent may override the Grievance Committee's decision. See Op. Guidelines, ch. 3.6.04, Proc. B, ¶ 8; see also 2011 Inmate Handbook, Inmate Grievances ¶ 18(b); 2013 Inmate Handbook, Inmate Grievances ¶ 19.

The grievance procedure "[t]ime limitations are mandatory," and "[i]f an inmate misses a deadline during the process, the grievance will be considered dropped," 2011 Inmate Handbook, Inmate Grievances ¶¶ 1(b), 1(c); 2013 Inmate Handbook, Inmate Grievances ¶¶ 1(b), 1(c). The pertinent Inmate Handbooks further provide that inmates who fail to get a response within the required time frame may "proceed to the next level." 2011 Inmate Handbook, Inmate Grievances ¶ 1(d); 2013 Inmate Handbook, Inmate Grievances ¶ 1(d). Officers are required to place each grievance and appeal in the inmate's "Booking Folder." Op. Guidelines, ch. 3.6.04, Proc. B, ¶¶ 6(a), 7(c), 12(a).

III. <u>Stile's Exhaustion Efforts</u>

Defendants move for summary judgment on all of Stile's remaining claims, on the basis of an affirmative defense of PLRA exhaustion, asserting that Stile did not exhaust his available remedies at all levels of the SCHC grievance process. Defendants have filed documents comprising Stile's Booking Folder. The documents they have filed, pertinent to Stile's claims, do not include any grievance appeals, which is evidence that such appeals were never filed by Stile.

A. <u>Exhaustion of Procedural Due Process Claim</u>

1. <u>First Level Grievances as to D-Pod Placement</u>

On January 18, 2013, three days after his placement in D-Pod, Stile filled out an Inmate Grievance Form, for the stated purpose of exhausting the SCDOC grievance process, complaining in pertinent part about his lack of information as to: why he was brought to the SCHC, his placement on D-Pod at the SCHC without an explanation, and whether and when he would be released from D-Pod into the general inmate population:

> I make this grievance as a matter [unreadable[2]] and a procedural process in preparation to future action to show I exhausted the grievance process. I arrived on 1/15/13 without any understanding of why I was brought here. I, since my arrival, have not had a phone call nor any access

---

[2]Several words in the first sentence of the court's copy of the January 18, 2013 Inmate Grievance Form are unreadable. <u>See</u> Doc. No. 83-3 at 2.

to law materials to aid in my pending legal matters. Also
no access to my lawyer or family. I am in Max without
explanation and no indication as to whether I will enter
into population and have full privileges. Please allow me
to know what my itinerary is.

Doc. No. 83-3, at 2. Corrections Officer ("C.O.") Brown's

January 19, 2013 response to Stile's request states, in

pertinent part:

For legal materials, [and] law library access you need to
submit a request to Asst. Superintendent Collins. In Max
you have the ability to write your attorney, [and] attorney
visits are allowed. As to being in Max Housing, the
Superintendent has 7 days to notify you in writing, and
Classifications has 30 days to classify you to a unit. I
have sent a copy to the Supervisor, so they are
aware. . . . Request slips for Classifications [and] Asst.
Super. Collins given to Inmate w/this form.

Doc. No. 83-3, at 2.

Stile followed up on C.O. Brown's response by using an

inmate request slip ("IRS"), dated January 22, 2013, see Doc.

No. 83-3, at 1, to ask Classifications why and how long he would

remain on the SCHC D-Pod:

I am in Max for 7 days now with no communications from
administration as to why nor how long I will remain in Max
or this facility. Please advise.

See Doc. No. 83-3, at 1. Sgt. Noseworthy's January 23, 2013

response states: "You are there per the [U.S. Marshals]." Id.


2.   Grievance Appeals as to D-Pod Placement

Pointing to the absence of a written record in the Booking

Folder that Stile pursued any grievance appeal of his D-Pod

11

placement, defendants argue that Stile did not properly exhaust his available grievance procedures on that claim.  Stile's response is two-pronged.  He maintains both that he filed an appeal to Assistant Superintendent Collins which was never answered, and he contends that he requested a Grievance Committee thereafter, but none was convened.  See Stile Decl. (Doc. No. 85, at 3).[3]  Stile further avers that he took those steps before January 30, 2013, when he placed a pleading in the prison mail system, later docketed as the petition for writ of habeas corpus in Stile v. Pelkie, No. 1:13-cv-00071-PB (D.N.H.). See id. (ECF No. 1, at 25); see also Plf.'s Obj. (Doc. No. 85, at 3).

Stile has not filed any document purporting to be a missing grievance appeal of his procedural due process claim.  Nor has he specified what that missing grievance appeal stated.  Neither Stile's January 18, 2013 Inmate Grievance Form nor his January

---

[3]In Stile v. Pelkie, No. 1:13-cv-00071-PB (D.N.H.), which Stile placed in the prison mail system on January 30, 2013, see Pelkie, Pet. for Writ of Habeas Corpus (ECF No. 1, at 25), Stile included an "Exhibit Index," listing the exhibits he attached that concern efforts he undertook to exhaust administrative remedies relating to the same procedural due process claim he raises in this case.  Notably, Stile listed his January 18, 2013 Inmate Grievance Form and January 22, 2013 IRS, but he did not list any later-filed SCDOC grievance appeal.  See Pelkie, Pet. for Writ of Habeas Corpus (ECF No. 1, at 5).  The list of exhibits ends with references to those January 2013 first-level grievances.  Id.

22, 2013 IRS refers to a lack of prior notice or a hearing preceding his D-Pod placement; rather, those documents record Stile's concerns that he did not know why he was on D-Pod, and whether and when he would be released. In the absence of a sworn statement or other evidence as to what Stile's (second grievance step) appeal stated, a reasonable fact finder could not conclude, without undue speculation, that Stile's appeal expanded the scope of his first level grievances to cover the due process claim he raises in this lawsuit, namely, that his placement on D-Pod violated his procedural due process rights to prior notice and a hearing. The evidence that Stile filed a grievance appeal on or before January 30, 2013, therefore, does not raise a genuine material issue as to whether he properly exhausted the second step of the SCDOC grievance process with respect to the procedural due process claim at issue in this case. And there is no evidence that the second step of that process was not available to Stile. Accordingly, the court grants defendants' motion for summary judgment on Stile's failure to exhaust available grievance procedures as to the procedural due process claims raised in this action, relating to Stile's placement on D-Pod without prior notice and a hearing.

B.     Exhaustion of Free Exercise and RLUIPA Claims

Defendants highlight the absence of any record of grievance appeals in Stile's Booking Folder as evidence that Stile did not properly exhaust all available remedies on his First Amendment free exercise and RLUIPA claims that arose while Stile was in D-Pod. Stile has not responded to defendants' exhaustion arguments relating to those claims, and the 235 numbered pages of grievances that have been filed here do not include any grievance appeal of Stile's religious freedom claims. Stile has not argued that any pertinent grievance appeal he filed is missing from this court's record. Nor has he argued that the second step grievance procedures were unavailable to him, with respect to those claims. There is an absence of a genuine issue of material fact on those matters. For that reason, the court grants defendants' motion for summary judgment based on Stile's failure to exhaust properly the available SCDOC appellate grievance procedures, as required by the PLRA (Doc. No. 74) with respect to his claims asserting RLUIPA and First Amendment Free Exercise Clause violations.

C.    Exhaustion of Advair Claim

Defendants argue that Stile also failed to exhaust all available remedies on his Fourteenth Amendment claim, relating to his alleged need for double the dose of Advair given to him for two years prior to January 30, 2015.

###### 1.    First-Level Advair Grievances

There is evidence that Stile filed a number of first-level grievances relating to Advair, see Decl. of Tracy Warren ("Warren Decl.") ¶ 10 (Doc. No. 83-5, at 2), but there are no copies of such grievances that this court has been able to identify in Stile's Booking Folder.  Stile's (unsworn) Complaint alleges that he began to complain to the Medical Department "on paper" about the strength of his Advair prescription sometime around January 3, 2015,[4] and defendants have not argued that Stile failed to file a proper first-level grievance on that issue.  Assuming, therefore, without deciding, that there is enough evidence to raise a triable issue as to whether Stile filed a pertinent first-level grievance challenging the adequacy of his Advair prescription, this court turns to the dispositive question here: whether Stile properly filed a grievance appeal of that issue.

###### 2.    Advair Grievance Appeals

---

[4]See Compl. ¶ 156 (Doc. No. 1, at 89) ("it has been more than three weeks that the Plaintiff has told medical (on paper) that the Advair is the wrong dose and that is why he is probably having difficulty breathing"); Warren Decl. ¶ 10 ("Stile filed grievances to the medical department relating to Advair"); Warren Decl. ¶ 15 ("Shortly before his grievance regarding the odor from the Advair dispenser," Stile "had questioned" the strength of his prescribed "Advair dosage").

Citing the absence of any appeals in Stile's Booking Folder, defendants have argued that Stile did not appeal the substance of his Fourteenth Amendment Advair claim. Stile maintains in his declaration, signed as true under pains of perjury, that he submitted such an appeal to "Assistant Superintendent Jake Collins" and then requested but did not receive further Grievance Committee review:

> Plaintiff did follow grievance procedures and did appeal to Assistant Superintendent Jake Collins but was never provided a "Grievance Committee." In fact, Plaintiff was shipped out of SCDOC on February 5, 2015 or February 7, 2015, just after his last request for Grievance Committee.

Doc. No. 85, at 6.

While such evidence could raise a factual question as to whether or not Stile appealed to "Assistant Superintendent Collins," and could form the basis of an argument that the third step of the process (Grievance Committee review) was not in fact available to Stile on his Advair claim, those issues are not material for purposes of this court's disposition of the (first) motion for summary judgment. The Inmate Handbook at the relevant time, see, e.g., 2013 Inmate Handbook, specified that the officer to whom inmates were required to appeal was the "Lieutenant – Operations and Security," a position the Inmate Handbook states was held by (then) Lt. Chris Brackett. While the SCDOC operational guidelines continued to provide after March 31, 2013 that inmates must submit grievance appeals to the

"appropriate" Assistant Superintendent, it is undisputed that
the position of the "appropriate" Assistant Supervisor was
vacant at that time.  See generally Weisgarber Decl. ¶ 9
(because of personnel vacancy, duties of Assistant
Superintendent-Operations and Security were transferred to
Lieutenant).  Jake Collins, listed in the 2013 Inmate Handbook
as "Assistant Superintendent of Education and Programs," did not
have the duty of receiving and responding to grievance appeals.
See Weisgarber Decl. ¶ 9; 2013 Inmate Handbook (listing SCDOC
officers and their job titles); Doc. No. 74-4, at 23 (same).
Rather, the undisputed evidence indicates that those duties were
transferred to the "Lieutenant – Operations and Security," the
officer to whom the 2013 Inmate Handbook clearly and
unequivocally directs inmates to file their grievance appeals.
See Weisgarber Decl. ¶ 9.  In the absence of any evidence that
Stile submitted an appeal to the correct officer designated by
the Inmate Handbook,[5] and lacking evidence -- or any developed,
persuasive argument -- that the second step of the grievance
process was otherwise unavailable to Stile, the court grants
defendants' motion for summary judgment on the Advair
prescription claim.  See generally Woodford, 548 U.S. at 90

---

[5]Cf. Ross, 136 S. Ct. at 1860 ("When an administrative
process is susceptible of multiple reasonable interpretations,
Congress has determined that the inmate should err on the side
of exhaustion.").

("[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"); Sango v. Miniard, No. 1:14-cv-344, 2016 U.S. Dist. LEXIS 34679, at *13-14, 2016 WL 1056512, at *5 (W.D. Mich. Feb. 8, 2016) (inmate who mailed grievance to wrong office did not properly exhaust available grievances), R&R adopted, No. 1:14-CV-344, 2016 WL 1045738, 2016 U.S. Dist. LEXIS 33685 (W.D. Mich. Mar. 16, 2016); Crane v. Deluna, No. 1:03-cv-06339-YNP PC, 2009 WL 3126279, 2009 U.S. Dist. LEXIS 87812, at *8 (E.D. Cal. Sep. 22, 2009) (inmate who appealed to wrong office and missed grievance appeal deadline did not properly exhaust available grievances).

IV.  Remaining Pending Motions

This Order granting defendants' (first) motion for summary judgment (Doc. No. 74) effectively moots defendants' (second) motion for summary judgment (Doc. No. 83), which seeks judgment as a matter of law on each claim for reasons other than PLRA exhaustion.  This Order also moots plaintiff's pending motion to reopen discovery (Doc. No. 86), as that motion seeks leave to conduct further discovery on the merits of plaintiff's claims.

**Conclusion**

For the foregoing reasons, the court directs as follows:

1. The court GRANTS defendants' (first) motion for summary judgment based on the affirmative defense of PLRA exhaustion (Doc. No. 74);

2. The court DENIES AS MOOT defendants' (second) motion for summary judgment (Doc. No. 83) and plaintiff's motion to reopen discovery on the merits of his claims (Doc. No. 86).

3. The clerk's office is directed to enter judgment and close this case.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 20, 2019

Cc:  Corey M. Belobrow, Esq.
     James Stile, pro se